## EDGE v. CALHOUN NATIONAL BANK.

1. None of the instructions, which are set out in full in the first division of the opinion, are erroneous for any of the reasons assigned by the claimant. While an instruction in a claim case, that transactions between father and children should be scanned with care, and that slight circumstances may be sufficient to carry conviction of fraud, is inaccurate without an instruction that badges of fraud must first be shown, and that it is for the jury to determine from the evidence whether such badges of fraud existed, such inaccuracy does not require the grant of a new trial under the facts of this case, where there is no exception to such charge on the ground that it is not a correct abstract principle of law.
2. Where the trial judge gave to the jury appropriate instructions upon every substantial issue in the case presented by the evidence, it was not incumbent upon him, in the absence of a timely written request, to instruct the jury upon some collateral issue or theory suggested by particular testimony relied upon by one of the parties to the cause.
3. Where the daughter of a juror married the son of one of the defendants in execution, and where the daughter of another defendant in execution was the claimant and asserted title to the property levied upon under such latter defendant, the juror was not related to the defendant in execution first referred to; and the trial judge did not err in overruling the claimant's objection to such juror upon the ground that the juror was disqualified by reason of such relation.
4. The verdict is supported by the evidence.

No. 3573.  June 13, 1923.

Claim. Before Judge Tarver. Gordon superior court. November 27, 1922.

An execution in favor of the Calhoun National Bank against J. S. Edge and others, for the principal sum of $1500, besides interest, attorney's fees, and costs, was levied upon certain lands as the property of said J. S. Edge. His daughter, Mary C. Edge, filed her claim to a portion of these lands. She claimed under a deed from her father to her, dated Jan. 19, 1921. She alleged that on reaching the age of 21 she proposed to leave home and take a business course in some college or get a job in some city, when her father proposed that if she would remain at home and work there he would sell her the premises in dispute for $1500 and allow her the sum of $250 a year for her services which would be applied on the purchase-money of this land. She alleged she fully complied with this verbal contract, and that her father, in pursuance thereof, made her a deed to said premises. She introduced testimony tending to establish such oral contract, full performance of its terms by her, conveyance of the said land to her by her father by said deed, that at the date of said contract of purchase the debts of her father in favor of the plaintiff were not in existence, and that she was an innocent purchaser for value without intention on her part or on the part of her father to delay or defraud his creditors. She introduced in evidence the deed from her father to her, which purports to be based upon an alleged consideration of $1500. She also introduced a deed from her father to his sons, W. M. Edge and R. W. Edge, dated Jan. 11, 1921, embracing all of the lands levied upon, except the portion claimed by her. The latter deed was recorded on the same day it was executed. These sons filed their claim to the portion of the lands levied upon, embraced in their deed. They claimed under a parol contract of purchase between them and their father, made in 1913. Under this oral contract they were to pay for their lands from what they made on them. They were to turn over what they made every year until they paid what the father thought it was worth, and he would turn it over to them. There was evidence tending to establish this oral agreement, and its performance by the sons. The plaintiff introduced in evidence another execution, prior in date to the one levied, in its favor against J. S. Edge and others, for the principal sum of $1500, besides interest, attorney's fees, and costs. The judgments on which these executions were based were obtained after the deeds from the father to his daughter and sons were executed; but the

debts on which they were founded were created prior to the execution of said deeds. Said indebtedness arose from loans by the bank to the Sugar Valley Ginning Co., which were indorsed by J. S. Edge and others. The jury was authorized to find that said loans were made upon the faith of a statement by the father, that he owned the property levied upon. It was further shown by the bank that the father returned these lands for taxation until the making of these deeds to his children. The maker of these notes, the Sugar Valley Ginning Co., was adjudged a bankrupt. The father was a director of said company and its general manager. The plaintiff introduced evidence tending to impeach the oral contracts between the father and his children, who claimed these lands under deeds alleged to be made in pursuance thereof. No accounts of payments made by the claimants were kept. No receipts were given by the father to the claimants' for payments made on the purchase-price of these lands. Claimants did not return these lands for taxation until after they got their deeds. The father returned them for taxes up to that time. By these conveyances the father stripped himself of all his property, except ten acres worth between $250 and $400.

It was not shown that the claimants at any time prior to the making of their deeds ever claimed or asserted ownership of these lands. In 1918 the father talked to one Dacus about selling these lands, and said he would have to have $10,000 for them. The jury was authorized to find that the father continued to run the the farm on these lands until the fall of 1920, when he sold his stock and turned over his farming tools to his boys, telling the latter to take them and go. The father testified that he had in 1920 $1000 in the bank, which he took out and lost in operating the farm for twelve months. In previous depositions the father testified that he sold the premises in dispute to his daughter eight years before, that she paid him for them, and that he invested the money in liberty bonds. In another part of these depositions he testified that he had spent this money. The father and his family resided on the premises in dispute during all the time since the daughter alleges she contracted for the purchase thereof. The jury was authorized to find that the father paid his sons for work and repairs on the lands claimed by them after their alleged purchase. The father had cotton, grown on the place after his alleged sale to his sons, ginned in his name, and he sold the same.

The father further testified that he boarded his sons and furnished them stock and farming tools with which to cultivate these lands during said period. There was evidence that the claimant taught school for two or three years after 1915 and before she obtained her deed to the premises in dispute.

The jury found the property levied on subject. The claimant made a motion for new trial, which was overruled; and error is assigned upon this judgment.

*William E. & Gordon Mann,* for plaintiff in error.

*J. G. B. Erwin,* contra.

HINES, J. (After stating the foregoing facts.)

The claimant insists that the trial judge erred in overruling her motion for new trial, for three reasons. One is, that he erred in giving certain instructions to the jury. The second is, that he failed to give to the jury certain principles of law applicable to the issues in the case. The third is, that he erred in not holding a juror disqualified to try this case.

1. The claimant complains of these instructions to the jury, to wit: (1) "Now, gentlemen, I give you in charge a portion of section 3224 of the Civil Code of this State: The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void: Every conveyance of real and personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description had or made with intent to delay or defraud creditors, and such intention known to the party taking." (2) "I charge you that if you find that the property in question was transferred by J. S. Edge to the claimant, and that his intent was to hinder, delay, and defraud his creditors, and that the claimant either knew or had reasonable grounds for suspicion that such was his intent in transferring the property, the deeds by which the property was attempted to be transferred are void, and it would be your duty under these facts to find a verdict in favor of a cancellation of the deeds and to find the property subject to the execution." (3) "If you find, however, that at the time of the transfer it was not the intent of Edge to hinder, delay, or defraud his creditors, or that his intent was not known to the claimants and that they had no reasonable ground for suspicion that such was his intent, then your verdict should be — We, the jury, find the property not subject, and find against the cancellation of the deed." (4) "A bona fide trans-

action on a valuable consideration, and without notice or ground for reasonable suspicion shall be valid." (5) " I charge you that fraud will not be presumed, but, being subtle in its nature, slight circumstances may be sufficient to carry conviction of its existence. I charge you further that transactions between father and children should be scanned with care, and slight circumstances may be sufficient to carry conviction of fraud."

The first four instructions contain correct abstract principles of law. About this there can be no very serious contention and no doubt. The first, second, third, and fourth instructions contain substantially plain provisions of the Code (§ 3224, par. 2). The first sentence of the fifth instruction is supported by a clear provision of our Code (§ 4626), and by many decisions of this court. *Rountree* v. *Lathrop,* 69 *Ga.* 757; *Comer* v. *Allen,* 72 *Ga.* 1; *Strickland* v. *Jones,* 131 *Ga.* 409 (62 S. E. 322). While the second sentence in the fifth instruction may not have been entirely accurate because the jury were told that transactions between father and children should be scanned with care, without an instruction that badges of fraud must first be shown, and that it was for them to determine from the evidence whether or not badges of fraud had been shown, which called for rebuttal or explanation (*Hicks* v. *Sharp,* 89 *Ga.* 311 (3), 15 S. E. 314), and while we do not think this instruction is supported by the rulings in *Woodruff* v. *Wilkinson,* 73 *Ga.* 115 (3), no point is made in the record upon the abstract correctness of this instruction; and for this reason we shall deal only with the grounds of error alleged to have been committed by the court in giving this instruction to the jury. Besides, we do not think that this inaccuracy, under the facts of this case, requires the grant of a new trial. The claimant contends that the first and second instructions are not applicable to the facts of the case. This position is untenable. Both are supported by the evidence. Claimant also contends that the first instruction presented the case more favorably to plaintiff than the law authorized, and more favorably to plaintiff than to claimant. The same objection is urged to the second instruction. It is not pointed out how such results follow; and these objections are therefore too vague, general, and indefinite to raise any point for decision by this court. Such assignments can be considered only for the purpose of ascertaining whether or not they state correct abstract principles of law. If they do, then the

investigation by this court ends there. *White* v. *State,* 141 *Ga.*
526 (81 S. E. 440); *Frank* v. *Adams,* 144 *Ga.* 270 (2) (87 S.
E. 3).

Claimant alleges that the language in the second instruction, to
wit, "attempted to be transferred" and "under these facts,"
amounted to an expression of opinion by the court upon the evi-
dence. We can not concur in this contention. The court did not
trespass upon the province of the jury in giving these instructions,
and did not intimate or express any opinion upon the evidence in
the case. The claimant contends that the third instruction ex-
cluded the right of the debtor to prefer one creditor to another.
Such right was not involved in this case; and if this instruction
had the effect of excluding from the jury this right, it would have
been properly given. The claimant excepts to the fourth in-
struction on the further ground that it ignored her contention that
prior to the time her father became indebted to the plaintiff she
had purchased and paid for the premises in dispute, thus putting
title to these premises in her, on which she could rely although her
father had never made her a deed. We do not see how this effect
follows from this instruction. The claimant excepts further on
the ground that this instruction was calculated to confuse and mis-
lead the jury by precluding them from taking into consideration
her prior purchase of these lands and payment of the purchase-
money in full. The court nowhere in this charge directed the jury
to find against the deed of the claimant without taking into con-
sideration these facts, and the exception is not well taken. Finally
it is contended that the fifth instruction is argumentative, and im-
pressed the jury with the view that fraud existed from the fact
that the deed of claimant was executed after the creation of her
father's debts to the bank, and ignored the fact that at the time
of the purchase these debts were not in existence. We do not see
how this instruction is subject to these objections. It is clearly
not argumentative, and in no way impressed the jury with the
view mentioned. A jury of ordinary intelligence could not have
received any such impression from this charge. The court there-
fore did not err in the above instructions for any of the reasons
assigned.

2. We come next to consider the complaint that the court
failed to give to the jury appropriate instructions upon the sub-

stantial issues involved in this case.  It is well-settled law that the trial judge should give to the jury appropriate instructions upon every substantial issue in the case presented by the evidence, and that failure to do so requires the grant of a new trial.  It is not alleged that any requests for instructions, oral or written, were preferred by the claimant to the court.  She relies solely upon failure of the court, without timely requests, to give to the jury appropriate instructions upon the substantial issues presented by the evidence.  The issue in this case was whether the deed from the father to the daughter was a fraudulent conveyance or not.  The trial court submitted to the jury instructions appropriate to this issue; and these instructions were full enough to enable the jury to intelligently pass upon and determine this issue one way or the other.  The claimant introduced evidence tending to establish her contention that she bought these lands from her father, and paid him therefor prior to the creation of the indebtedness which the plaintiff was endeavoring to collect by levy and sale of the premises in dispute.  Her complaint is that the judge did not give to the jury instructions appropriate to this theory of her case.  Where the substantial law covering the real issue in a claim case is given in charge, and more specific instructions are desired by the claimant, appropriate requests for that purpose should be made. *Savannah Electric Co.* v. *Jackson,* 132 *Ga.* 559 (4) (64 S. E. 680); *So. Ry. Co.* v. *Hill,* 139 *Ga.* 549 (5) (77 S. E. 803); *Rountree* v. *Neely,* 147 *Ga.* 435 (94 S. E. 542).  Where a party desires an instruction upon some collateral issue in the case or upon some theory suggested by particular testimony relied on by such party, a timely written request therefor should be made; and in the absence of such timely written request it is not incumbent upon the trial judge to call the attention of the jury to such theory, and to instruct them that they should consider such evidence in determining whether such theory is sustained or not. *Williams* v. *State,* 120 *Ga.* 870 (48 S. E. 368).  Any failure or omission of the trial judge, in the absence of timely requests, to give fuller instructions to the jury in this case does not require the grant of a new trial.

3.  The son of a codefendant in fi. fa. married the daughter of a juror who tried this case.  The claimant was the daughter of another codefendant under whom she claimed title.  The first co-

defendant was interested in having the property claimed subjected to the payment of this fi. fa. Was the juror disqualified to try this case? The juror had no financial interest in the result of this litigation. Was he disqualified from relationship to the first codefendant? The marriage of the daughter related her husband to her kin, but did not relate any of her kindred to his. *Burns* v. *State,* 89 *Ga.* 527 (15 S. E. 748) ; *Central R. &c. Co.* v. *Roberts,* 91 *Ga.* 513 (18 S. E. 315) ; *Wilburn* v. *State,* 141 *Ga.* 510 (2) (81 S. E. 444). So the court below did not err in holding this juror competent to try this case, over the objection of the claimant that the juror was disqualified.

4. The verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur.*